IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

JOHN LUCKETT
ADC#116947                                                                                              PETITIONER

VS.                                           5:13CV00344 JTR

RAY HOBBS, Director,
Arkansas Department of Correction                                             RESPONDENT

## MEMORANDUM ORDER

### I. Background

Pending before the Court is a § 2254 Petition for a Writ of Habeas Corpus filed by Petitioner, John Luckett. *Doc. 2*. Before addressing Luckett's habeas claims, the Court will review the procedural history of the case in state court.

On June 14, 2006, Luckett pleaded guilty, to second-degree murder, in Lincoln County Circuit Court. *Doc. 9-1*. The second-degree murder charge arose from Luckett killing his cellmate in the Cummins Unit. He received a thirty-year sentence, consecutive to the sixty-year sentence he was already serving in the ADC for first-degree murder and aggravated robbery.

After entering his 2006 guilty plea, Luckett did not pursue any postconviction relief in state court. He initiated this federal habeas action on

November 1, 2013. He argues that: (1) he received ineffective assistance of counsel from his lawyers; (2) his lawyers had a conflict of interest; (3) he fought his cellmate in self-defense to avoid being sexually assaulted; and (4) he was "insane" at the time of the offense due to schizophrenic delusions. *Doc. 2*.

Respondent argues that Luckett's claims are: (1) barred by the one-year statute of limitations contained in 28 U.S.C. § 2244(d)(1); and (2) procedurally defaulted.

For the reasons discussed below, the Court concludes that all of Luckett's habeas claims are untimely and that his habeas Petition must be dismissed, with prejudice.

## II. Discussion

### A.   Application of AEDPA's One-Year Statute of Limitations

The Antiterrorism and Effective Death Penalty Act ("AEDPA") requires a § 2254 habeas petition to be filed within one year of the date on which the state judgment "became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).

Luckett entered his guilty plea on June 14, 2006. He had thirty days from that date, until July 14, 2006, to file a notice of appeal with the Arkansas Supreme

Court. When he did not file a notice of appeal, Luckett's judgment became "final" on that day for purposes of 28 U.S.C. § 2244(d)(1)(A).[1]

The next day, on July 15, 2006, the habeas statute of limitations began to run. One year later, on August 14, 2007, the statute of limitations expired. Luckett initiated this federal habeas action on November 1, 2013,[2] more than six years after the expiration of the limitations period.

B. **Analysis of Statutory and Equitable Tolling**

AEDPA provides for statutory tolling during the time a "properly filed" petition for collateral review is pending in state court. *See* 28 U.S.C. § 2244(d)(2). Luckett is not entitled to any "statutory tolling" because he never pursued any postconviction relief in state court.

In an effort to receive "equitable tolling," Luckett argues that he suffers from a mental impairment:

> I have been mentally disturbed for a very long time. Diagnosed schizophrenic. Suffering chemical imbalance. Could not function properly. Still receiving treatment. No one would help me file my paper work so today I file [the habeas Petition] on my own. I had been limited until now.

---

[1] In *Camacho v. Hobbs*, 774 F.3d 931, 934 (8th Cir. 2015), the Eighth Circuit acknowledged that, under Arkansas law, there is no general right to appeal an unconditional guilty plea. Nonetheless, the Court held that, for purposes of triggering the habeas limitations period, a defendant who pleads guilty is entitled to the thirty days in which he could have, but did not, file a notice of appeal. *Id.*

[2] November 1, 2013 is the date Luckett placed his habeas Petition in the ADC's prison mailbox system. *Doc. 2 at 14.*

*Doc. 2 at* 13. He adds that, during the time he could have filed a timely federal habeas petition, he "suffered some, if not [a] full delusional . . . state of mind[.]" *Doc. 23.*

The United States Supreme Court has explained that, in order to invoke equitable tolling, a habeas petitioner must satisfy the following two-pronged test: (1) he must demonstrate that he has been "pursuing his rights diligently;" and (2) he must show that "some extraordinary circumstance" stood in his way and prevented timely filing of his habeas action. *See Holland v. Florida*, 560 U.S. 631, 649 (2010). The diligence required under *Holland* is "reasonable diligence not maximum feasible diligence." *Holland*, 560 U.S. at 653. "[E]quitable tolling is appropriate only under limited circumstances . . . [and] must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes." *Earl v. Fabian*, 556 F.3d 717, 722 (8th Cir. 2009); *see also Runyan v. Burt*, 521 F.3d 942, 945 (8th Cir. 2008) ("Equitable tolling is an *exceedingly narrow* window of relief.") (emphasis in original). The Eighth Circuit has recognized that a "mental impairment can be an extraordinary circumstance interrupting the limitation period[.]" *Nichols v. Dormire*, 11 Fed. Appx. 633 (8th Cir. 2001).[3]

---

[3] In *Nichols*, the habeas petitioner argued that he was entitled to equitable tolling because he had been diagnosed with "various psychotic disorders and had been prescribed psychotropic medication." The district court rejected this argument because "the degree and duration of [the petitioner's] mental impairment did not interfere with the running of the one-year statute of limitations for his habeas corpus petition."

4

Luckett was first incarcerated in the ADC in 2000, at the age of seventeen.[4] He has a lengthy and substantial history of psychiatric treatment for schizophrenia.[5] At various times, he has reported auditory and visual hallucinations, paranoid delusions, and suicidal and homicidal ideation. Moreover, in the early years of Luckett's incarceration, he was often non-compliant in taking his oral medications, which exacerbated his psychotic symptoms. *Ex. A at 000058*.

On February 14, 2005, Luckett's treating psychiatrist requested a "mandatory forced medication hearing" for Luckett. *Ex. A at 000735*. On October 11, 2005, the ADC Medication Review Panel concluded that Luckett required "mandatory forced" medications:

> This panel unanimously agrees that this man suffers from a serious mental disorder. At this time the patient is thought to be schizophrenic. The panel also believes that the patient is a significant danger to himself and others and appears to be gravely disabled to the point that he is not able to make reasonable decisions about taking medications. This is based on:
> 1. Lack of Insight Regarding his Illness or the Fact that he Needs Medications for his Illness.
> 2. The Patient's Significant History of Violence when Delusional and/or Paranoid

---

On appeal, the Eighth Circuit affirmed, emphasizing the district court's findings that: "[1] [the petitioner] lived in general population at the Jefferson City Correctional Center, [2] was employed at the institution's chemical products factory, [3] appeared coherent and alert at all times, [4] did not suffer from auditory or visual hallucinations, [5] was not suicidal or homicidal, and [6] was capable of registering a written complaint to prison officials[.]" Accordingly, "the degree and duration" of the petitioner's mental impairment was not an extraordinary circumstance that justified equitable tolling.

[4] On October 18, 2003, Luckett killed his cellmate at the Cummins Unit, and was transferred to the Varner Super Max Unit. *Doc. 9-2 at 2*. In January of 2009, Luckett was transferred from Varner Super Max to the Tucker Maximum Security Unit. *Doc. 9-2 at 7*.

[5] The record that Respondent produced with its Response consisted of only Luckett's Judgment and Commitment Order and his ten-page ADC "Status Assignment Sheet." *Doc. 9*. The Court later granted Luckett's request for the discovery of his ADC mental health treatment records. *Doc. 19*. His ADC mental health treatment records from 2000 to 2014 consist of over 1,000 pages of documents. Respondent produced these records under seal, without bates-numbering them. This made it impossible for the Court to cite them in a meaningful way.

Sealed Court's Exhibit A ("Ex. A"), which is attached to this Memorandum Order, is a set of the *relevant* medical records submitted by Respondent, which *the Court has bates-numbered* to allow them to be cited with specificity.

> 3. The Patient's Significant Hyper-religiosity and Auditory Hallucinations which Feed this Paranoia or Delusional Status

*Ex. A at 000617*. Since that time, Luckett has undergone mandatory Haldol injections.[6]

During many of the months between July 15, 2006, and August 14, 2007, the time period in which Luckett could have filed a timely habeas petition, there is considerable evidence that, even with a forced medication regimen, Luckett remained psychotic and continued to suffer from a serious mental disorder.

For example, on October 26, 2006, Luckett "continue[d] to voice paranoid and persecutory delusions . . . . Inmate Luckett is experiencing significant mental health issues. Although he is on mandatory forced medication he continues to voice psychotic thoughts." *Ex. A at 000477*. On December 19, 2006, Luckett cut his wrists after hearing voices commanding him to do so. This resulted in medical officials at Varner Super Max referring Luckett for admission into the ADC's "Special Programs Unit [SPU]," its residential treatment facility for mentally ill inmates: "His [psychotic] behavior is increasing in frequency and intensity and we are concerned that he will attempt to harm himself without further stabilization. We would appreciate SPU's assistance in keeping him safe as well as stabilization." *Ex. A at 000476*.

---

[6] The Medication Review Panel has periodically met and continued Luckett's forced medication.

On December 31, 2006, while in the SPU, Luckett was noted to be "medication compliant but continues to experience SIGNIFICANT symptoms." *Ex. A at 000463*. By February 2, 2007, Luckett's auditory hallucinations had "lessened due to present medication and Inmate's compliance with same." *Ex. A at 000436*. By March of 2007, the SPU determined that Luckett had stabilized and returned him to Varner Super Max. Luckett unsuccessfully pursued an administrative appeal of that decision. *Ex. A at 000403*.

After he returned to the Varner Super Max Unit, in March of 2007, he remained there until January of 2009, when he was transferred to the Tucker Maximum Security Unit, where he still remains incarcerated.[7] *Doc. 9-2 at 7*. The medical records, on and after March of 2007, reflect an ebb and flow to his psychotic symptomology, but the overall trend indicates that Luckett stabilized and made considerable improvement after his forced medication regimen was firmly in place:

> 09/10/07. Well oriented friendly inmate as if just out of bed feeling sleepy and mainly concerned about the medication and plans to increase the meds. Otherwise he has very good attention insight and judgment, his cognition is normal and he understood well. He related back to the writer. *Ex. A at 000076*.
>
> 03/05/08. Patient appears to be well adjusted. Shows some symptoms of mental health distress due to psychosis. *Ex. A at 000070*.
>
> 04/14/08. Patient appears to be well adjusted. Shows very few symptoms of mental health distress . . . *Ex. A. at 000066*.

---

[7] Initially, Luckett was placed in administrative segregation at the Tucker Maximum Security Unit. However, by June of 2009, he made a successful transition to general population. *Doc. 9-2 at 8; Ex. A at 000357*.

07/02/08. Inmate is oriented to time place and person. Inmate thoughts are clear and logical. Inmate mood and affect [are] normal at this time. Inmate does not have suicidal ideation at this time. *Ex. A. at 000065.*

09/22/08. Patient appears to be well adjusted. Shows very few symptoms of mental health distress. *Ex. A. at 000061.*

01/20/09. He was very well groomed today. He had good eye contact. He was cooperative polite, smiled during the interview. No suicidal or homicidal ideations. His thoughts were spontaneous, goal-directed and logical. No delusions elicited. He did give a history of hearing voices, in particular, telling him to curse God and die but not recently. No derailment, confusion, disorganization. He did not appear to be responding to internal stimuli so he appears to be baseline and is doing very well on his medications. No other significant findings. I have not seen this inmate before but from my interview with him today, he appears to be doing very well at this time. We will continue to monitor him and continue the medications as ordered except for the Geodon which we did agree to reduce the dose due to side effects. *Ex. A. at 000055.*

04/07/09. He was alert and oriented x3, a little bit slowed but appropriate and cooperative; polite. No suicidal or homicidal ideations. Thoughts were spontaneous, goal-directed and logical. Hygiene was excellent. He had good eye contact. No delusions elicited. No derailment, confusion, disorganization or any other evidence that he's experiencing any act of ongoing psychosis. Overall, he appears to be doing very well. *Ex. A. at 000054.*

06/15/09. Inmate is doing well in GP [general population]. He has no comments, complaint or concerns today. *Ex. A. at 000357.*

07/07/09. He looked fairly good today. He continues to be a bit restricted in his affect but his hygeine is good. He communicates well. Speech was normal rate, tone and volume. No suicidal or homicidal ideations. He didn't verbalize any delusions. There was no derailment, confusion, or disorganization. He appears to be taking good care of himself. *Ex. A. at 000053.*

10/09/09. He was alert and oriented x3. His hygiene was excellent. He had a bright affect, good eye contact. Speech was normal rate, tone and volume. He does experience some ideas of reference at times but he's not causing any dysfunction now. He's getting great enjoyment of what he's doing. He has some stress at times but seems to be related to the contact with his family and concerns about being in prison the rest of his life. No suicidal or homicidal ideations today. No derailment, confusion or disorganization. I didn't see where he was having any delusions at all today. He also asked about schizophrenia and whether it would be cured and I explained to him about the need for medications most likely for the rest of his life and he seemed to accept this without difficulties. He is

8

eating well. Overall, it appears most likely this is baseline for this inmate. *Ex. A. at 000051.*

12/22/09. Other than the above [verbalizing things crawling on his skin and religious delusions] he was alert and oriented x3. He was cooperative not spontaneous but goal-directed to questioning. Affect continues to be blunted, non threatening. No suicidal or homicidal ideations. He still needs to work on his hygiene which is poor. He is somewhat malodorous. He has good eye contact however and was polite. No other new findings. *Ex. A. at 000049.*

01/05/10. This inmate has a diagnosis of chronic undifferentiated schizophrenia and is on forced medication. This inmate has a well documented history of decompensation and has no insight and therefore [sic] noncompliant with po ["per orem" or oral] medication which is the reason why he is on injections. He also has a history of becoming very violent and psychotic when off medications including a history of killing another inmate as documented in his chart. As I've seen him recently he continues to experience some ideas of reference but his functioning has been much improved. His affect and his ADL's are all markably improved so he does benefit from the medication. However, I feel that if this inmate was not on forced meds due to his poor insight that he would quickly decide to come off the medications and would therefore in my opinion decompensate and become a definite danger to himself or others. *Ex. A. at 000048.*

03/23/10. He was alert and oriented x3. Had good eye contact. His thoughts weren't spontaneous at all but perfectly goal-directed to my questions. No delusions elicited. No derailment, confusion or disorganization. He appears to be possibly at baseline at this time. Had a big smile on his face. He seemed content and doing very well. *Ex. A. at 000038.*

06/15/10. He had a good range of affect today. He looked fine. He was ambulating without difficulty. He had good eye contact. He's very cooperative and polite not very spontaneous but perfectly goal-directed and logical in his thoughts. Hygiene was good. No suicidal or homicidal ideations. He didn't verbalize any delusions. There was no derailment, confusion or disorganization in his thought content. No evidence of any ongoing problems. Inmate appears to be in remission. *Ex. A. at 000036.*

09/14/10. He looks good today. He had a good range of affect. Good eye contact. He was polite and cooperative. He's doing well out in population. No suicidal or homicidal ideations. No delusions were elicited. No derailment, confusion, disorganization in his thoughts. No other new findings. *Ex. A. at 000035.*

12/14/10. He had a big smile on his face. He continues to be just a bit restricted but very cooperative and polite with the examination. No suicidal or homicidal ideation. He continues to be very future oriented. He did not verbalize any delusions today. There was no derailment, confusion or disorganization in his

thoughts which were not spontaneous but goal-directed to all my questions. His hygiene was fairly good. He appears to be doing very well at this time and he agreed with our plan to continue things status quo at time. *Ex. A. at 000029.*

02/01/11. Inmate continues to do well in population under treatment. . . He seems to enjoy working where he is and content with his current location. *Ex. A. at 000028.*

05/03/11. Inmate compliant with his medication with no reported or observed side effects. He had no complaints, questions or concerns today except to state the same things as before. When I asked him what that was about he talked about possible tactile hallucinations, feeling things crawling on him which has been going on for some time. He's doing well in population working as a gym porter. He's very future oriented and was eager today to get out of clinic so he could go to chow. Overall he appears to be doing well and reached baseline. He's alert and oriented x 3. He's a very tall, thin gentleman who was very upbeat and showed good range in his affect today. He had good eye contact. Speech was normal rate, tone and volume. No suicidal or homicidal ideations. No derailment, confusion or disorganization. There are still some possible tactile type hallucinations present. Otherwise he's doing well and taking good care of himself with good hygiene. He's non-threatening and not having problems with security or other inmates. *Ex. A. at 000021.*

05/25/11. [Luckett] [r]eceived his GED this week. *Ex. A. at 000519.*

08/16/11. Inmate still out in population and doing well working as a gym porter. His only complaint today was about feeling like he's walking in a fog at times. Some problems with remembering conversations which he states he feels is due to the medication and in fact reported that it's gotten better with time. He has been compliant with his injection and the Cogentin for side effects which he denied having any other than the above today. None were observed. He had no complaints about staff or any problems with other inmates. He appears to be taking fairly good care of himself. He did look rather thin but claims he hadn't gained weight. In fact, I did check his weight and at the end it was a lie he appeared to have put on a few pounds. His hygiene was excellent today. He was very cooperative and polite. Affect remains restricted to blunted but his thoughts were spontaneous and responsive to all my questions and goal-directed with no evidence of any breakthrough psychosis today. No suicidal or homicidal ideations. *Ex. A. at 000020.*

11/01/11. He was alert. He's oriented. He had good eye contact. He's very cooperative and polite. His affect continues to be very restricted. At the same time no suicidal or homicidal ideations. There is some reported hallucinations ongoing of the auditory nature which have become worse of late and appear to be related to as stated his disposition and increased stressed in his routine which has changed. However, otherwise he continues to take care of himself and perform his

duties outside of the cell. He continues to perform good ADL's. His hygiene looked excellent on today. Overall, he appears to still be maintaining although he did impart to us and it's obvious that he is starting to feel more pressure and more stressed because of what's going on. We did agree to continue the medication status quo at this time and try and help with the other issues. *Ex. A. at 000016.*

01/31/12. 29 year old African American male inmate being seen in call out at the Maximum Security Unit for follow-up inmate doing much better this visit than last clinic. Refer the reader to the previous note date November 1 at which time the inmate was having some breakthrough hallucinations, paranoia and possibly some delusional thinking. His medication was continued and he apparently has cleared based on his presentation today. He denies any side effects to the medications and in fact his AIMS exam equaled zero. He also reported that he has obtained his GED and finished the unity program. He remains in population working and seemingly doing well. *Ex. A. at 000011.*

05/01/12. Inmate with no complaints questions or concerns today. I asked him specifically about voices, breakthrough hallucinations and he states very little and very intermittent. So it's not really been a distressing problem. He copes by listening to the radio or as he states drinking a little extra water seems to be helpful it's certainly not effecting his functioning. He continues to function out in population, working a job in the gym and doing very well. He has been compliant with medication with no reported or observed side effects today. *Ex. A. at 000008.*

08/17/12. Inmate was seen on his job, alert and oriented in all spheres, doing very well, stable. He has no complaints or concerns he denies any side effects or other mh [mental health] concerns. *Ex. A. at 000508.*

01/22/13. IM [inmate] fully alert and oriented to all spheres today. Cooperative and polite. Well spoken, good eye contact . . . No delusional thinking today verbalized, did not appear to be responding to internal stimuli. Hygiene was good. Still in pop[ulation], and appears to con[tinue] at baseline. *Ex. A. at 000505.*

04/09/13. IM [inmate] fully alert and oriented in all spheres today . . . [n]o delusional thinking . . . did not appear to be responding to internal stimuli . . . [s]till in pop[ulation]. *Ex. A. at 000501.*

07/15/13. Enjoys working in population as a gym porter . . . no evidence of any breakthrough psychosis. *Ex. A. at 000500.*

10/01/13. Inmate was very upbeat . . . no evidence of any breakthrough psychosis . . . [n]o changes since last clinic. He was fully alert and oriented on all spheres. He had good eye contact His speech was normal rate, tone and volume. No suicidal or homicidal ideations. He did not appear to be responding to internal stimuli. His concentration was good. He appeared to be doing very good. He's taking very good care of himself. *Ex. A. at 000498.*

The medical evidence establishes that Luckett was suffering from disabling psychotic symptoms for a substantial portion of the time in which he could have filed a timely habeas petition, roughly July 15, 2006 to August 14, 2007. The Court finds that evidence is sufficient to satisfy the *second prong* of the *Holland* test — "that some extraordinary circumstance stood in his way and prevented timely filing of his habeas action" *during that period of time*. However, the medical evidence also establishes that Luckett's schizophrenia later stabilized and he was restored to an "alert and oriented" status, at least by October of 2007.

*The first prong* of the *Holland* test requires Luckett to establish that he has been pursuing "his [habeas] rights diligently" on and after the fall of 2007. Here, there is nothing in the record that explains why Luckett waited six years, from October of 2007 until November 1, 2013, to initiate this federal habeas action.

The medical evidence reflects that, since at least October of 2007, Luckett has been "alert and oriented," with largely normal cognition, mood, and affect. By January of 2009, Luckett was transferred from Varner Super Max to the Tucker Maximum Security Unit, where he was initially placed in administrative segregation. However, in 2009, he was moved to the general population, with only occasional returns to administrative segregation. *Doc. 9-2 at 7-10*.

While at Tucker Max, Luckett has worked at various jobs including positions in the kitchen, the yard, and the gym. In 2009, Luckett demonstrated

sufficient insight about his disease to "ask about schizophrenia and whether it would be cured[.]"*Ex. A. at 000051.* In 2011, he obtained a GED. *Ex. A. at 000519.*

Finally, throughout his incarceration in the ADC, Luckett has demonstrated the insight and ability to document and initiate several administrative complaints and requests. *See e.g. Ex. A. at 000952-959; 1039-1062.* As early as 2001, Luckett pursued the ADC administrative grievance process complaining about an excessive-force incident. This culminated in a *pro se* § 1983 action that Luckett initiated in the Eastern District of Arkansas: *Luckett v. O'Neal*, E.D. Ark. No. 5:01CV00198 SMR/HLJ.[8] In 2006, while the habeas statute of limitations was running, Luckett requested executive clemency. *Doc. 9-2 at 5.* A year later, in 2007, he again requested executive clemency. *Doc. 9-2 at 6.*

Luckett suffers from a chronic but treatable mental illness. While he unquestionably has had "bad days" in the years following the expiration of the one-year limitations period, the record fails to support his contention that his schizophrenia, which has been under reasonable control for the last six years, prevented him from filing this habeas action until November of 2013. Accordingly, because Luckett has failed to demonstrate that he acted with "reasonable diligence" in pursuing this habeas action, he is not entitled to invoke the doctrine of equitable

---

[8] United States District Judge Stephen M. Reasoner, adopting the Recommended Disposition of United States Magistrate Judge Henry L. Jones Jr., dismissed the lawsuit because Luckett asserted only an official-capacity claim for money damages.

tolling and his habeas Petition is barred by AEDPA's one-year statute of limitations.[9]

### III. Conclusion

IT IS THEREFORE ORDERED THAT the Petition for a Writ of Habeas Corpus is DENIED, and this case is DISMISSED, WITH PREJUDICE. IT IS FURTHER ORDERED THAT a Certificate of Appealability is DENIED pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases.

Dated this 19th day of November, 2015.

_____
UNITED STATES MAGISTRATE JUDGE

---

[9] Insofar as Luckett argues that he acted in self-defense and was "insane" at the time of the offense, this does not satisfy the "actual innocence" exception to the statute of limitations in light of his guilty plea. *See McQuiggin v. Perkins*, 133 S. Ct. 1924 (2013) (the "severely confined" actual innocence exception requires the production of new evidence making it more likely than not that no reasonable juror would have convicted the petitioner); *Jennings v. United States*, 696 F.3d 759, 764 (8th Cir. 2012) ("Actual innocence means factual innocence, not mere legal insufficiency.") (internal quotations and alterations omitted); *Cagle v. Norris*, 474 F.3d 1090, 1099 (8th Cir. 2007) ("in non-capital cases the concept of actual innocence is easy to grasp, because it simply means the person didn't commit the crime.").